# ANTHONY L. RICCO

*Attorney At Law*

20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007

TEL. (212) 791-3919  FAX. (212) 791-3940

December 14, 2009

**FILED BY E.C.F.**

Hon. Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York

Re:  **United States v. Sathajhan Sarachandran**
　　　Docket No.  06 Cr. 615 (RJD)

Dear Judge Dearie:

　　　This letter is written in support of the sentencing of Sathajhan Sarachandran which is presently scheduled for January 11, 2010.  At the time of sentencing, Sathajhan Sarachandran shall request the court to impose a sentence at variance with the guidelines and impose a sentence pursuant to 18 U.S.C. § 3553 (a).

## I.   Preliminary Note

　　　This case represents yet another example of how the mechanical application of the guidelines, with its numeric configurations, obscures the court's ability to find and impose a sentence that is sufficient but not greater than necessary to protect the public and prevent further crimes of the individual defendant before the court.　It is for this reason, the defense requests the court to impose a non-Guidelines sentence.

　　　In this case, this court is required to impose a sentence on a young defendant, a bright college graduate, a young man whose reasons for engaging in the conduct deemed criminal in our nation was based completely and entirely upon his sadness at generations of brutal racial and ethnic discrimination and the level of relentless violence used by the government of Sri Lanka to crush the Tamil people into submission in his home - in Sri Lanka.

　　　Sathajhan Sarachandran, is a young man, an honor student who had never

previously committed a criminal offense in his entire life, a young man who is absolutely loved and adored by his close knit, hard working, law abiding family in Canada, a young man without any anger or bitterness against the United States of America, a young man who lived a friendly, law abiding life in Canada, a young man who was emotionally devastated by the level of violence utilized by the government of Sri Lanka in killing children at Orphanages as well as other citizens, a young man without any prior military experience or expertise in either the procurement or use of weaponry or firearms training, and who permitted himself to be used by the Tamil Tigers to help the LTTE acquire weapons to fight against oppression in Sri Lanka.

In consideration of the appropriate sentence to impose in this case, the defendant requests that the court consider the documented history of the  legislated oppression of the racial and ethnic Tamil people and the impact that it had on Sathajhan Sarachandran as an impressionable young adult living in Canada.  It is without dispute that Sathajhan Sarachandran is a quiet studious young man, whose love of hard work and commitment to his family has been paramount in his life.   It is also clear that Sathajhan Sarachandran was manipulated by high ranking operatives in the LTTE.  It is also clear that his criminal conduct was incapable of completion.   It is also clear, that throughout the duration of his incarceration, Sathajhan Sarachandran, a citizen of Canada, who has never had the opportunity to marry or who is without children, will, as a result of United States policy, never receive a visit from his family.

In view of the harshness of the conditions of imprisonment Sathajhan Sarachandran will be required to endure; in view of the hardship that the sentence will impose upon his family and the fact that the defendant in this case; in view of the that fact that his a college educated, remorseful and peaceful young man who is capable of redemption that common sense and justice warrants that the statutory minimum sentence of 25 years in prison, in his case, is absolutely sufficient but not greater than necessary to protect the public from the further crimes of Sathajhan Sarachandran.

## II.   Background/Guilty Plea

The Charges & Guilty Plea

On January 26, 2009, the morning of jury selection in this case, Sathajhan Sarachandran, unable to persuade his codefendant's to accept a proposed global plea agreement, decided to, and entered a, plea of guilt to the entire indictment.1

---

[1]     For the purposes of sentencing, it is important to remind the court that the defendant was represented by retained counsel for a substantial period of time.  During that time period, several plea agreements were offered to the defendants which would have resulted in the

2

Sathajhan Sarachandran pled to the five count superseding indictment which charged the following: <u>Count 1</u>, that between January 2, 2003 and August 19, 2006, the defendant and others provided material support to the Liberation Tigers of Tamil Eelam in violation of 18 U.S.C. § 2339B(a)(1) and 18 U.S.C. § 2339B(d); <u>Count 2</u> that between January 2, 2003 and August 19, 2006, the defendant and others conspired to provide material support to the Liberation Tigers of Tamil Eelam in violation of 18 U.S.C. § 2339B(a)(1) and 18 U.S.C. § 2339B(d); <u>Count 3</u> that between January 2, 2003 and August 19, 2006, the defendant and others attempted to provide material support to the Liberation Tigers of Tamil Eelam in violation of 18 U.S.C. § 2339B(a)(1) and 18 U.S.C. § 2339B(d); <u>Count 4</u> that between July 1, 2006 and August 19, 2006, the defendant and others conspired to acquire, transfer, receive, possess, export and use anti-aircraft missiles in violation of 18 U.S.C. § 2332g(a)(1), 18 U.S.C. § 2332g(b)(1) and 18 U.S.C. § 2332g(c)(1);  18 U.S.C. § 2339B(d); and, Count 5 that between July 1, 2006 and August 19, 2006, the defendant and others attempted to acquire, transfer, receive, possess, export and use anti-aircraft missiles in violation of 18 U.S.C. § 2332g(a)(1), 18 U.S.C. § 2332g(b)(1) and 18 U.S.C. § 2332g(c)(1).

Prior to the entry of the guilty plea, the court read into the record an Advice of Penalties.   After the entry of the guilty plea, the remaining defendants Sahilal Sabaratnam and Thiruthanikan continued with jury selection, although they too eventually pled guilty shortly thereafter.

<u>The Presentence Investigation Report</u>

The P.S.R. in calculating the sentence to be imposed relied upon an analysis of the charged offenses being converted into two (2) groups.  See, Guideline § 3D1.2(d) and P.S.R., ¶74, page 23.  The P.S.R. concluded that Counts 1, 2 and 3 should be grouped together and that Counts 4 and 5 constitute a separate group.

---

imposition of a sentence at staggering odds with the 40 year sentence the P.S.R. declares is warranted in this case.  Once current counsel became involved in the case, aggressive action was taken to secure a plea on behalf of Sathajhan Sarachandran, which included an authorized trip to visit the family of Sathajhan Sarachandran in Canada.  Although the more favorable plea was no longer available to Sathajhan Sarachandran, he was willing to enter an offered plea with a sentence 50% less than the years the P.S.R. has declared warranted.  The plea, however, involved the participation of all the defendants.  This left Sathajhan Sarachandran unable to avail himself of plea, although he was prepared to enter such a plea.  Plea negotiations continued up to and until the morning of jury selection in this case.   Rather than proceed to trial and face the increased possibility of the imposition of a life sentence, in a case where he recognized and accepted his criminal responsibility,  Sathajhan Sarachandran pled guilty to the entire indictment, with the hope, but without any promise, that he would be sentenced at the statutory minimum of twenty-five (25) years, i.e. Three hundred (300) months.

The base offense level for Counts 1, 2 and 3 is set at a level 26. Since the offenses involved the provision of dangerous weapons with the intent to believe that they would be used to commit or assist in the commission of a violent act, 2 levels were added pursuant to Guideline § 2M5.3(b)(1). Since the offenses are felonies that were intended to promote "a federal crime of terrorism," an additional 12 levels were added pursuant to Guideline § 3A1.4(a). The P.S.R. recommended a 2 level adjustment for obstruction of justice, pursuant to Guideline § 3C1.1, on the grounds that Sathajhan Sarachandran's attorney filed an affirmation (later withdrawn) setting forth fabricated claims to support a defense of duress.

The P.S.R. declined to grant Sathajhan Sarachandran a reduction for the acceptance of responsibility pursuant to Guideline § 3E1.1(a) or (b). Therefore, an adjusted offense level for Counts 1, 2 and 3 is set at a level 42. See, P.S.R. ¶ 66, page 22.

The base offense level for Counts 4 and 5 is set at a level 20. Since the offenses involved the purchase of guided missiles 4 levels are added pursuant to Guideline § 2K2.1(b)(1)(B). Since the offenses involved a destructive device (a missile) and a device for launching a missile), the offenses were enhanced 15 levels pursuant to 2K2.1(b)(3)(A). Since the offenses are felonies that were intended to promote "a federal crime of terrorism," an additional 12 levels were added pursuant to Guideline § 3A1.4(a). The P.S.R. again recommended a 2 level adjustment for obstruction of justice, pursuant to Guideline § 3C1.1, on the same grounds utilized when calculating the Group I offense level.

The P.S.R. again failed to grant Sathajhan Sarachandran a reduction for the acceptance of responsibility pursuant to Guideline § 3E1.1(a) or (b). Therefore, a adjusted offense level for Counts 4 and 5 is set at a level 53. See, P.S.R. ¶ 73, page 22.

After applying the grouping provision required by Guideline § 3D1.2(d), the P.S.R. concluded the total offense level was 53. Since the offenses were to promote a federal crime of terrorism, the defendant's criminal history category is automatically a Category VI. See, P.S.R. ¶ 24, page 13. However, when the total offense level exceeds a level 43, it must be treated as a level 43. Therefore, based on a total offense level of 43 and a Criminal History Category of VI, the guideline sentencing range is life.[2] See, P.S.R. ¶ 110, page 28.

---

[2]    On Counts 1, 2 and 3, the guideline imprisonment range is restricted to 180 months on each count as a result of the applicable statutory sentencing maximum of 15 years on those counts.

<u>Objections To The Presentence Investigation Report</u>

Sathajhan Sarachandran objects to the P.S.R. on several grounds.   First, the P.S.R. fails to grant him any reduction for acceptance of responsibility pursuant to Guideline § 3E1.1(a) and or (b).   While the timeliness of his plea, on the morning of jury selection, perhaps deprives him of the full 3 level reduction, Sathajhan Sarachandran's is entitled to a two (2) level reduction pursuant to Guideline § 3E1.1(a).   The P.S.R. also fails to grant him a mitigating reduction pursuant to Guideline 3B1.2.

Sathajhan Sarachandran, however, believes that litigation over the above adjustments is essentially rendered an academic exercise.   Were this court to grant him a full three (3) level reduction for acceptance of responsibility and the maximum four (4) level reduction for a mitigating role, the Guideline calculation in this case would still exceed a level 43.

Finally, Sathajhan Sarachandran also objects to the characterization of the LTTE throughout the P.S.R.   The history, in Sri Lanka, of systematic discrimination and brutal oppression of the ethnic minorities, known as the Tamil people dates back hundreds of years.   The resistance to initially non-governmental Sinhalese and later Sionhalese government oppression existed long before Sri Lanka was granted it's independence from the British in 1948 and the recent civil war of 1983.   However, Sathajhan Sarachandran understands and recognizes that the P.S.R. has accepted the government's view of history of the Tamil people.

Sathajhan Sarachandran has no material objection to those portions of the P.S.R. which set forth his individual criminal history in Part B and/or the offender characteristics in Part C.

<u>Statutory Sentences</u>

The statutory maximum sentence under counts 1, 2 and 3 is 15 years on each count.  18 U.S.C. § 2339B(a)(1).   On counts 4 and 5, the minimum term of imprisonment is 25 years and the maximum term of imprisonment is life on each count.  18 U.S.C. 2332g(c)(1).  A conviction under counts 1, 2 and 3 carry a maximum period of three (3) years supervised release, a fine up to $250,000.00, along with a mandatory special assessment of $100.00 on each count of conviction.   A conviction under counts 1, 2 and 3 carry a term of supervised release up to life, a fine up to $2,000,000.00, along with a mandatory special assessment of $100.00 on each count of conviction.   See, P.S.R., ¶¶ 109, 111, 114 and 115, pages 28 thru 29.

## III.  Sentencing Recommendation

<u>Guidelines Sentence</u>

Although the Sentencing Guidelines are no longer mandatory, the court is nevertheless required to consider the Guidelines range and render a guideline analysis before making its ultimate sentencing determination.  See, <u>United States v. Booker</u>, 534 U.S. 220, 245-246 (2005).

In this case, however, Sathajhan Sarachandran requests that the court impose a non-guidelines sentence at the statutory minimum of 25 years imprisonment.

<u>Statutory Sentences</u>

As stated above, the statutory maximum sentence under counts 1, 2 and 3 is 15 years on each count.  18 U.S.C. § 2339B(a)(1).  On counts 4 and 5, the minimum term of imprisonment is 25 years and the maximum term of imprisonment is life on each count. 18 U.S.C. 2332g(c)(1).

Congress has granted this court wide discretion, when imposing a sentence for a violation of 18 U.S.C. § 2332, however, that discretion begins at a substantial 25 year threshold and a maximum of life.   This substantial threshold of 25 years in the penitentiary is applicable, regardless of the offender's criminal history, background or character, regardless of the offender's role in the offense, regardless of offender's reasons or motivation for the participation in the offense and regardless of the impact that the sentence will have on the offender's family.   In this case, a review of these factors, which are enumerated in 18 U.S.C. § 3553 (a), points towards a sentence, for this offender, at the high statutory threshold of 25 years in the penitentiary.

In short, a sentence of 25 years in prison is, and has always been, an exceedingly long term of punishment.  Such a term of imprisonment is more than sufficient to punish young Sathajhan Sarachandran, the Tamil resident of Canada.

<u>Authority To Impose A Non-Guidelines Sentence</u>

In *United States v. Booker*, 543 U.S. 220, 226-227 (2005) the Supreme Court held that the mandatory application of the Sentencing Guidelines was in violation of the Sixth Amendment.  As a remedy, the Supreme Court excised the provisions of the Sentencing Reform Act of 1984, including 18 U.S.C. § 3553(b) that required the imposition of Guidelines-range sentences.  Id., at 245-246.

When the Supreme Court excised the mandatory application of the federal sentencing guidelines, it also eliminated the concept and the necessity of finding a departure to avoid the mandatory application of the federal sentencing guidelines.

In the post-*Booker* era, a sentencing court may now impose a sentence other than that recommended by the Guidelines if, in its discretion, the sentencing court determines the statutory regime of 18 U.S.C.§ 3553(a) warrants such a sentence. *United States v. Caveras*, 550 F.3d 180, 188 (2d Cir. 2008).

> A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime.  In addition to taking into account the Guidelines range, the district court must form its own view of the "nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553 (a)(1).

*United States v. Caveras*, supra, 550 F.3d at 188.  The Supreme Court's rejection of the mandatory application of the guidelines, breathed renewed life into the concept that an individual stood before the court for sentencing, and that the breadth of that individual's life should be considered equally in the determination of arriving at the appropriate and reasonable sentence.  The Supreme Court restored to the sentencing court the ability to impose a sentence free of the mechanical application of a sentencing regime, which often required the court to set aside many to powerful, yet subtle factors, which should impact a court in assessing the proper sentence to be imposed in a case.

The legislative frame work for the sentencing court to apply at the time of sentence is 18 U.S.C. § 3553(a).  The legislative mantra of 18 U.S.C. § 3553 (a) is reflected in 18 U.S.C. § 3661 which states:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing a sentence.

Ultimately, 18 U.S.C. § 3553(a) instructs the sentencing court to impose a sentence which is sufficient, but not greater than necessary to punish the defendant, and prevent the defendant from committing future crimes, *inter alia*.  The ultimate goal of the sentencing court is to find just punishment by carefully balancing important public policy consideration along with the prophylactic and rehabilitative objectives of 18 U.S.C. § 3553(a).  In this case the imposition of a 25 year sentence on this first time

offender, who acted, to assist in rendering his native people an opportunity to respond to acts of brutal oppression, is sufficient but not greater than necessary to protect the public from him and to promote the other enumerated sentencing goals.

Exemplary Work History/Background & Aberrational Conduct

In Sathajhan Sarachandran's case, there exists a combination of several factors at play, which indicate that, in his case, a sentence at variance with the guidelines is appropriate.

The first, and most important, is the character and background of Sathajhan Sarachandran, as exhibited by his education, work history and devotion to his family living in Canada. Second is the aberrational nature of his involvement in the instant offense (based upon his beliefs concerning violence in his native land) and his history of an exemplary law abiding life. The third, and most significant, is the devastating hardship that the incarceration in the United States would impose upon his family.

Family Background

Sathajhan Sarachandran, is one of four (4) children born to Shunmugan Sarachandran (age 61) and Thabalamar Sarachandran (age 56). All the children were born in the Northern Province of Jaffna in Sri Lanka and later immigrated to Canada, escaping the horrific conditions of social, economic and political oppression rendered upon the Tamil people.

Sathajhan Sarachandran's father, Shunmugan Sarachandran, a man of Tamil descent is a refugee from the Sri Lankan civil war, who immigrated to Canada in 1989. Joining his brother in law in Canada, he is one of the over one million Tamil who fled the horrific conditions of oppression imposed by the Sri Lankan government over the past twenty-five (25) years.

Shunmugan Sarachandran, a college educated civil engineer, who taught physics in Northern Sri Lanka, moved to Canada to find political freedom and a better opportunity for himself and to build a foundation so that his children (particularly his daughters) could have a future historically and systematically denied Tamil children in Sri Lanka.3

---

[3] In Sri Lanka, the Tamil, a minority people, are denied job opportunities based upon the preference given to the majority Sinhalese people. Education of Tamil children has never been encouraged by the Sinhalese majority. For example, Sathajhan's mother, Thabalamar Sarachandran, was denied a formal education growing up in Sri Lanka. As with most regimes

Shunmugan Sarachandran found employment in Canada and worked several years, first as a cook and later as a cashier, before he brought his wife and four (4) children to Canada in 1992. Shunmugan Sarachandran's dream for his children, coupled with the hard work of both he and wife has been realized with the success of their children. All of his children were ultimately raised in the safe haven provided by the Canadian government. Freed from the constraints, restrictions, discrimination and violence of the Sinhalese people, the Sarachandran children all excelled in education, historically a priority of the Tamil people.

The oldest of the Sarachandran children is Saruthasi Sarachandran (age 34). Saruthasi Sarachandran is a college graduate of Geroge Brown University in Toronto, Canada and is presently employed as a high school counselor and resides in Oslo, Norway. Next is Sathajhan , presently age 29, college educated with a degree in Computer Science from the prestigious Windsor University in Toronto, Canada. Sugeetha Sarachandran (age 28) is nurse who resides at home with her parents, is a graduate of McMaster University (Life Sciences) in Toronto, Canada. Thanya Sarachandran (age 24), also a graduate of McMaster University (Business and Accounting) is a business administrator, also resides at home with their parents. Sayanthan Sarachandran (age 22) is a college student attending Sheridan College, and lives in Toronto, Canada. See, P.S.R. ¶ 88, page 24.

The sacrifices of Shunmugan Sarachandran and his wife have not been without toll or hardship. In 1999, Shunmugan Sarachandran suffered a stroke, which left him permanently disabled. As a result of the stroke, he was no longer able to provide for the financial needs of his family and required the family assistance to achieve his daily activities.

Sathajhan Sarachandran responded to this tragedy magnificently, as he made sacrifices with his college education and took on extra work to assist his family and to ensure that his younger sisters and brother had educational opportunities.

Sathajhan Sarachandran assisted his family by first temporarily interrupting his studies at Windsor University and taking on a job. The family, however, wanted him to complete his education. When he returned to school, he continued to work extra jobs after school and during the summer months, with the large share of the money earned going to assist the family.

---

and governments which are based upon the preference of a racial or ethnic group, opportunity for those outside the majority group are severely limited and strictly enforced through custom, culture, restrictive laws and covenants and ultimately by military enforcement.

Involvement in Politics of Sri Lanka

First, Sathajhan Sarachandran arrived in Canada at age twelve (12).  As a boy living in the northern province of Jaffna, he experienced, first hand, life as a ethnic minority in his home land of Sri Lanka.  He recalls the childhood struggles of his parents and extended family to find a decent living and to express themselves socially, culturally and politically sans the oppression of the Sinhalese people.   While Canada served as a social/political haven and spiritual promise land from the oppression at home, the Sarachandran family faced a different brand of social alienation that many identifiable immigrants face as a result of their strange names and accents in a new land.

As a result, the Tamil children formed clubs, teams and other support groups to assist them with language barriers, to advise each other on educational opportunities and to generally assist each other with the adjustment to life in Canada.  Sathajhan Sarachandran has always been a bright, inquisitive and sensitive individual.   In Junior High and Senior high school, he helped form a study/support group that also assisted Tamil students with language issues.   Sathajhan Sarachandran also helped form and served as a leader in these activities, providing an excellent academic role model for other Tamil children.

It is out of this experience that Sathajhan Sarachandran, a young man, without any criminal record or history of violence towards any person, a young man who has been devoted to his family and accepted the role of providing a positive role model for siblings and other young people in his community, became knowledgeable of and voluntarily involved with the Liberation Tigers of Tamil Eelam (LTTE).

The Tamil Student Association

While in college at Windsor University, Sathajhan Sarachandran became involved in the Tamil Student Association during his freshman year.  The purpose of the college club was to provide Tamil students with a support group for their academic needs and social and cultural interests while attended the university.   Unlike many other college groups or clubs, the Tamil Student Association organized festivals, social events and invited guest speakers and sponsored educational events at the university. The Tamil college students, however, were very much aware of the then 25 year civil war raging in their home of Sri Lanka.  Many escaped the violence of war themselves, others had close friends and family members who lives were lost in the cross fire of the battle lines.  The students pursued their interests with obtaining literature, review of scholarly articles and invited guest lecturers to the university, who presented views of the origins of the war and the history of the Tamil people.   Sathajhan Sarachandran

participated as a student leader in the Tamil Student Association.

It is important to note that the Tamil Student Association at Windsor University is a non-violent group that has absolutely no history of participating in any acts of violence or even aggressive disruptive social/political behavior.  After graduation in 2002, Sathajhan Sarachandran returned home to Scarborough and began working several jobs to assist his family.   However, in addition to hard work to support his family, Sathajhan Sarachandran volunteered and participated in the Tamil Youth Organization.    The Tamil Youth Organization was also a social/academic support group for Tamil youth living the Scarborough area.  Sathajhan Sarachandran was a leader and a role model for the younger Tamil children.  He was a college graduate, drug and alcohol free, young person, who personified the success and hope that Tamil parents, as refugees, had for their children in their new home land.  In addition to recruitment and counseling, Sathajhan Sarachandran taught class and organized a Tamil soccer team.   Many of the members of the Tamil Youth Organization were also college graduates who came back to assist others in transition.

The P.S.R. discusses the activity of Sathajhan Sarachandran in the year 2003, but fails to point out the significance of that year and how the events he experienced that year impacted his later conduct. 4

While the origins of the Tamil people remain in dispute, modern history reveals that the Tamil people of Sri Lanka today are the descendants of bonded laborers brought to Sri Lanka from India by the British to serve as cheap laborers on Tea, Coffee, Rubber and Coconut plantations in Sri Lanka.  After hundreds of years of colonialism, Sri Lanka became an independent nation in 1948.  Since independence, the political relationship between the Sinhalese majority and the Sri Lankan Tamil minority community has been strained.  Sri Lanka has been unable to contain its ethnic violence as it escalated from sporadic acts of mob violence into to civil war.  The Sri Lankan Civil War has several underlying causes, most prominent is the centuries of oppression against Tamil minority.  The civil war has resulted in the death of nearly 100,000 people and, according to human rights groups such as Human Rights Watch, the forced

---

[4]    The P.S.R. also fails to provide the court with any historical context in which to understand the extensive history of the discrimination faced by the Tamil people at the hands of the Sinhalese.  While this history is irrelevant to the issue of guilt, the depth of that the history serves to provide the court with important information to understand why an educated young man like Sathajhan Sarachandran would get involved in the charged offense.  Such information provides a context for the court to understand the offender in determining an appropriate sentence.  For an overview of Tamil history, the defense invites the court to an overview of the history of the Tamil people at http://en.wikipedia.org/wiki/Sri_Lankan_Tamil_people.

disappearance of thousands of others.    Since 1983, Sri Lanka has also witnessed massive civilian displacements of more than a million people, with eighty percent of them being Sri Lankan Tamils.

In the year 2003, a cease fire was declared in Sri Lanka.  For the first time since the commencement of the war, there was a strong sense of hope and optimism in the Tamil community both in Sri Lanka and throughout the international diaspora of Tamil people who fled Sri Lanka.  The cease fire also provided an opportunity for safe travel back to Sri Lanka for many who had escaped and who had found homes in new countries.    With the cease fire, many student groups, along with many other international aid groups organized trips to Sri Lanka.  Sathajhan Sarachandran as a leader of the Tamil Youth Organization helped organize a group comprised of 13 Tamil students and/or recent college graduates, to travel to Sri Lanka during the 2003 cease fire.

During the trip, which lasted two weeks, Sathajhan Sarachandran and the other young people traveled throughout their native country, which included areas previously under the control and authority of LTTE.[5]  During the trip both the Sri Lankan government and authorities of LTTE used the opportunity to persuade the travelers of the legitimacy of their respective causes.  The trip was very structured and organized and Sathajhan Sarachandran and others attended seminars, visited branches of the LTTE government, hospitals, health clinics, orphanages, schools and the homes of the Tamil people.  It was while traveling in the areas under the control of the LTTE, that the travelers found the true devastation of war and were able to observe that the Tamil people had been the victims of extreme acts of violence by the government, which included the indiscriminate public raping of Tamil women and young girls, the kidnapping of Tamil male youth, bombings of public and residential buildings and other horrific indiscriminate acts of murder.  Sathajhan Sarachandran and others quickly observed that the level and depth of the suffering of the Tamil people had effectively been suppressed from the international media by the Sri Lankan government. The trip deeply impacted Sathajhan Sarachandran, as he was exposed to a level of deprivation of his fellow Tamil that exceeded the farthest reaches of his imagination.

Upon his return to Canada, Sathajhan Sarachandran increased his involvement in the Tamil Youth Organization and his efforts to bring the plight of the Tamil people to

---

[5]    In 2003, the portion of Northern and Eastern Sri Lanka was under the control of the LTTE and was being run as a de-facto quasi-independent state, with its own airports, banks, courts, Police force, Army, Navy and Air Force but these institutions are not formally recognized by any international government.

the attention of others. Sathajhan Sarachandran organized a second trip to Sri Lanka during the cease fire and returned to his native land with another group of students and recent college graduates. He revisited many of the same areas of his first trip, including Jaffna and Columba, areas under the control of the LTTE. He returned to visit friends that he met at the orphanages, young people very close in age and young teens, who lived in perpetual poverty and in subhuman economic conditions. Most significantly, Sathajhan Sarachandran realized that very little had changed during the cease fire, as the international community seemed uninterested in the plight of the dark skinned Tamil people. The second trip left Sathajhan Sarachandran very depressed but more determined than ever to be part of a solution to bring an end to the historic suffering and misery of his people to an end.

Intelligent young Tamil people like Sathajhan Sarachandran were seen as potential assets by the leadership and the rank and file of LTTE. They were educated and connected to resources outside of the control of the Sri Lankan government. However, given the deplorable conditions suffered by the Tamil people, it was not difficult to persuade many young people, such as Sathajhan Sarachandran to become advocates and agents of the cause of the Tamil people as expressed by LTTE. Sathajhan Sarachandran became a willing participant who believed in the correctness of the cause of the Tamil people and that our peace loving God was on their side. The young people whom Sathajhan Sarachandran met while visiting were not terrorists as described and legislated by the United States government, but, to him were good hardworking Tamil men, Tamil women and Tamil children who have suffered from years of sanctioned social, economic and political discrimination, enforced by horrific acts of violence from any opposition, including public rapes, kidnapping and murder only because they were of Tamil descent. The people that Sathajhan Sarachandran met in Sri Lankan and who touched his heart expressed a simple desire "*to be free*."

While watching television during 2006, Sathajhan Sarachandran viewed a B.B.C. report on the status of the breakdown of the peace talks in Sri Lanka, which included video footage of the bombing of an orphanage by the Sri Lankan government. The bombing resulted in the killing of 56 innocent children and young adults, some of which he met while visiting Sri Lanka. On this day, as Sathajhan Sarachandran watched the television, he was overcome with emotion and began to cry. As the tears streamed down his face, he wondered why the international community permitted these acts of cruelty against innocent Tamil people to take place and continue, often without so much as a reaction from the rest of the free world. It was at that moment that he decided that he wanted to do something to help end the violence, so he permitted himself to be used by the LTTE in their search for weaponry to arm themselves.

It is important to point out that, contrary to the claim in the P.S.R., Sathajhan Sarachandran has absolutely no prior military or weaponry training of any type. Sathajhan Sarachandran has always been an industrious, caring, law abiding young man, who has never even had a fist fight. Sathajhan Sarachandran has never had any training or knowledge of any weaponry or firearms of any type.    He has never participated in any activity of a violent nature, other than that charged in the present indictment.

Sathajhan Sarachandran's motivation to participate in the crimes charged was completely grounded in a young man's emotional response to what he viewed as the endless brutality of his people, sanctioned by the other nations of the world.    In this respect Sathajhan Sarachandran is not unlike many young men throughout recorded history, men such as Nelson Mandela, Walter Sisulu and seven others  (convicted on acts of terrorism in 1964 Rivonia Treason Trial and sentenced to life imprisonment); Patrick Henry ("*If this is treason, then make the most of it,*" "*give me liberty or give me death*") and George Washington (declared terrorists and stamped with treason by the British Government in 1770's); Joe Doherty (declared a terrorist and ultimately sentenced to life in prison by the Republic of Ireland);6  Denmark Vesey  (executed by the South Carolina government in 1822 for his conspiracy to launch a wide scale armed rebellion against slave holders; Toussant L'overture (champion against Haitian slavery ultimately convicted by the French on treason in 1802 and later died in a French prison).

While the above individuals lived at different times in history and employed different means of expression, each was motivated by a heartfelt sense that generations of governmental sanctioned discrimination and violence must be halted.

When individuals are motivated by such heartfelt experiences and reaction to, in their view, unwarranted and unbridled acts of extreme violence, such individuals, as history has revealed, are capable of redemption.

Sathajhan Sarachandran recognizes and accepts that he must serve a long prison sentence, in a foreign nation, isolated from his family.  Sathajhan Sarachandran also

---

6    Doherty left school aged 14 and began work on the docks and as an apprentice plumber, before being arrested in 1972 on his seventeenth birthday under the Special Powers Act. Doherty was interned on the prison ship HMS Maidstone and Long Kesh Detention Centre, and while interned heard of the events of Bloody Sunday in Derry, where 14 innocent civil rights protesters were shot dead by the British Army.  This led to him joining the IRA after he was released in June 1972.  In the mid-1970s Doherty was convicted of possession of explosives and sentenced to six years imprisonment in Long Kesh. He was released in December 1979 and later convicted sentenced to life for his participation in other acts of violence.

recognizes that there are many who, as a result of their heartfelt commitment to own their political views, do not accept or recognize as legitimate his views. However, Sathajhan Sarachandran, as Nelson Mandela did many years ago, merely wants the court to know of the emotional anguish and sense of hopelessness that motivated him to participate in the charged offenses and to consider that motivation in deciding to impose a sentence that is sufficient, but not more than necessary to comply with the sentencing goals of 18 U.S.C. § 3553(a)(1).

Sathajhan Sarachandran is not proud that he committed a criminal act and has genuine remorse. However, in fashioning a sentence to impose upon, Sathajhan Sarachandran is praying that this court recognize that he is not a bad or evil person, that wanted to live a good, honest and decent life that would bring pride to his parents. During the course of his young life, he was simply unable to resolve his emotional response to horrific violence in a more productive positive manner. It is Sathajhan Sarachandran's hope that this court will consider him, his life, dreams and his disappointments in deciding the length of the sentence to be imposed upon him for *his* actual conduct in this case.

For Sathajhan Sarachandran a twenty five (25) year prison sentence is not simply a mathematical number derived after reviewing charts, but represents a life time of isolation, alienation from his family, a seemingly insurmountable spiritual and physical task to endure in a foreign place. At his core, Sathajhan Sarachandran is a good, loving, sensitive and compassionate young man who with his educational background and work history, capable of redemption.

<u>Authority To Impose a Sentence Based upon Hardship To The Family</u>

As stated above, in this case, Sathajhan Sarachandran requests that the court consider the impact that a sentence of incarceration would have on the emotional stability of his family.

While the concept of hardship to the family is generally presented in terms of economic hardship, this court has the authority to consider emotional hardship imposed on a close knit, loving family. In the pre-*Booker* era, family responsibilities were not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. The Second Circuit, however, found family circumstances compelling, and hence a permissible basis for a sentence outside the guidelines, in extraordinary circumstances. See gen., *United States v. Galante*, 111 F.3d 1029, 1035 (2d Cir. 1997); *United States v. Johnson*, 964 F.2d 124, 129-30 (2d Cir. 1992)(where defendant supported his wife, two children and cared for disabled parents); *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991). In the post *Booker* era, the Court of Appeals has recognized

that the discretion to impose a sentence at variance with the guidelines based upon hardship to the family. *Cf. United States v. Cutler*, 520 F.3d 136, 164-166 (2008).

In this case, it is the failure of the family to have direct contact with Sathajhan Sarachandran which creates 1) both a hardship to his family and 2)renders the sentence imposed more severe than would otherwise be endured by a sentenced prisoner.

Since the entry of the guilty plea in this case, Sathajhan Sarachandran has not had any visits from his family and will not have any such visits over the course of imprisonment. On three (3) separate occasions, two (2) by driving and one (1) by air travel, Sathajhan Sarachandran's family were denied entry into the United States. The family has been notified by United States government officials that since Sathajhan Sarachandran has been convicted of a terrorist act, it is the policy of the United States to deny family members permission to enter the country to visit him.

Such a condition imposes an extreme hardship on this extremely close knit family.7 These conditions render Sathajhan Sarachandran's 25 year sentence even more harsh. Sathajhan Sarachandran was born in Sri Lanka and is now a citizen of Canada, Sathajhan Sarachandran does not have a single friend or relative living in or residing within the United States. During the course of his 25 year incarceration, he will not have a visit from any family members or friends from home. The defense requests that the court give these conditions of confinement *some* consideration, in combination with the other factors set forth above, in determining the appropriate sentence.

Employment History & Aberrant Behavior

It is without question that Sathajhan Sarachandran is an achiever who, with the exception of his conduct in this case, has led an exemplary and law abiding life which has been distinguished by hard work and an unwavering commitment to his family and a concern to others less fortunate than he.

The offending conduct in this case represents an aberration in the otherwise law abiding life of Sathajhan Sarachandran. Sathajhan Sarachandran is a second generation, college educated, immigrant to Canada, who, prior to his arrest in the United States lived an exemplary law abiding life. Prior to this case, Sathajhan Sarachandran had never been arrested for any criminal conduct. Sathajhan Sarachandran followed his parent's dream of a better life for their children when they immigrated to Canada. Sathajhan

---

7   Sathajhan Sarachandran shall provide the court and the government with a video clip on CD of a statement to Sathajhan Sarachandran from his family to be considered in connection with his sentence.

16

Sarachandran excelled in academics and became a role model for his brother and sister and other Tamil children.  In the context of Sathajhan Sarachandran's law-abiding life, his participation in the present offense was greatly out of his character.

Title, 18 U.S.C. § 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary," to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, *inter alia*.

In the pre-Guidelines era, sentencing courts traditionally examined the past of the defendant to determine whether the offending conduct was a deviation.  Such a finding, naturally assist the court in fashioning the appropriate punishment for the offending conduct.

As once observed by Judge Frankel of this Court many years ago:

> The defendant before us, who has moved for a reduction of sentence, is a man of 35.  He has no prior criminal record. He is talented, gainfully employed, earnest in the discharge of family obligations, and entitled to hope for a bright, if unsung future.  He needs no 'rehabilitation' our prisons can offer.  The likelihood that he will transgress again is as close to nil as we are ever able to predict.  Vengeance, the greatest text tell us, is not for mortal judges.  Why, then should such a man be sentenced to imprisonment at all?

*United States v. Braun*, 382 F.Supp. 214 (SDNY 1974)

There is absolutely no question, that the offending conduct in this case represents an aberration in the otherwise exemplary life of a hardworking, compassionate, generous, respected, law abiding young man.

In our sentencing scheme, either under the federal sentencing guidelines or pursuant to 18 U.S.C. § 3553(a), an offender's prior history of bad conduct or criminal history is a factor relied upon by the court to determine the extent of punishment to impose and to forecast the likelihood of the repeat of criminal conduct in the future. Contrarily, where the defendant's conduct is aberrational in nature, and the offending conduct is truly a deviation, such factors likewise weigh heavily in the court's determination of the type of sentence to impose to protect the public.

In this case, a review of the life, history and background of Sathajhan Sarachandran strongly indicates that a sentence in access of 25 years in the penitentiary

is more than adequate to serve as an appropriate punishment and to protect the public.

In the post *Booker* era, the Supreme Court has made it resoundingly clear, that in the appropriate case, the court can impose a sentence at variance with the guidelines even in "*the mine run cases*". See, *Gall v. United States*, 128 S.Ct. 586 (2007) and *Kimbrough v. United States*, 128 S.Ct. 558 (2007).

The Supreme Court in *Gall*, *supra*, specifically rejected the Eighth Circuit's view that a variance requires "extraordinary" circumstances, and its application of a proportionality formula to determine whether a Guideline-variance is justified. The Court noted that the district court committed no procedural error, because it adequately considered the § 3553(a) sentencing factors and adequately explained its sentence. Turning to a substantive "reasonableness" review, the Court found that the district court "quite reasonably attached great weight" to a number of factors in imposing a below-Guidelines sentence.

In *Gall*, the court observed that the defendant's post-offense conduct, his support of family and friends, his successful work ethic, combined with his lack of criminal history, his age at the time of the offense, *inter alia*, warranted a sentence at variance with the guidelines.

Finally, the 25 year war civil war between the Sri Lankan government and LTTE is over. The leaders of LTTE, who influenced young students like Sathajhan Sarachandran, have all been killed in battle or captured an executed. The Tamil people have returned to position as a permanent minority to the Sinhalese people in Sri Lanka. A sentence of 25 years as punishment for a college education, caring student such as Sathajhan Sarachandran and his isolation in an American prison will undoubtedly send a strong deterrence to young Tamil people like him back in Canada and Sri Lanka.

Disparity of Sentencing

The defendant having been placed I a position where he plead guilty to a minimum sentence of twenty-five (25) years, is definitely going to be punished more severely than similarly situated defendants. The court is aware that in other districts throughout the country other individuals charged with the same crimes as the defendant and having the same level of culpability as the defendant have received sentences of less than sixty (60) months. Yet the defendant herein faces twenty-five (25) years as a minimum sentence. The disparity in sentencing is alarming and cannot be justified. Nonetheless the defendant because of the plea faces a draconian sentence at least five (5) times greater than similarly situated defendants in other districts. The defendant but for the statutory mandatory minimum, would be seeking to have the

court impose a sentence of time served.  However, at this point all the defendant can request is that the court impose no more than the mandatory minimum sentence as the reasonable and appropriate sentence for Sathajhan Sarachandran.

### IV. Conclusion

Congress has granted this court wide discretion, when imposing a sentence for a violation of 18 U.S.C. § 2332, however, that discretion begins at a substantial 25 year threshold and a maximum of life.   This substantial threshold of 25 years in the penitentiary is to be applied, regardless of the offender's criminal history, background or character, regardless of the offender's role in the offense, regardless of offender's reasons or motivation for the participation in the offense and regardless of the impact that the sentence will have on the offender's family.   In this case, an individualized review of these factors, which are enumerated in 18 U.S.C. § 3553 (a), points towards a sentence, for this individual offender, at the high statutory threshold of 25 years in the penitentiary.

Sathajhan Sarachandran prays that this court will impose a sentence at variance with the guidelines and not impose an sentence greater than 25 years.  In this case, with this defendant, a sentence of 25 years is sufficient but not greater than necessary to fulfill the sentencing objectives of the 18 U.S.C. 3553 (a).

Respectfully,

/S/ *Anthony L. Ricco*

Anthony L. Ricco

/S/ *Edward D. Wilford*

Edward D. Wilford

ALR/es
cc: A.U.S.A. Marshall Miller, Esq. (By Email & ECF)
    A.U.S.A. Greg Anders, Esq. (By email & ECF)