**LAW OFFICE OF SAM A. SCHMIDT**
**THE TRINITY BUILDING**
**111 BROADWAY**
**NEW YORK, N.Y.  10006**
**(212) 346-4666**
**FACSIMILE (212) 346-4665**
**e-mail Lawschmidt@aol.com**


**Sam A. Schmidt, Esq.**
_____
Shameeda Mohammed, *Paralegal*



February 21, 2014



Hon.  Raymond J.  Dearie
United States District Court
225 Cadman Plaza East
Brooklyn, N.Y.  11201


Re:  *United States v.  Nadarajah*  Cr. 06-615 (RJD)


Dear Judge Dearie:


This letter is written in reply to the Government's February 14, 2014 sentencing submission.  While  the Government's letter was called a response to Mr. Nadarajah's  January 31, 2014 sentencing submission, it did little to respond to our factual and legal arguments, it repeated the same arguments it has made for years, and disappointedly, demonstrated a retreat from the movement by our entire criminal justice community, including the Justice Department, towards individualized sentencing and a return towards Guidelines sentencing without rational arguments. The letter is also, at times, inaccurate.

In the nine pages, the Government ignored the significant issues raised in Mr. Nadarajah's submissions as to 3553 factors, but also all but ignored your Honor's discussion of those issues raised in *United States v. Thavaraja* and the Second Circuit's adoption of your thoughtful and detailed rational for

1

**LAW OFFICE OF SAM A. SCHMIDT**

individualized sentencing in the unique LTTE cases. Ignoring almost the entirety of our discussion of the 3553(a) factors, the Government asks that your Honor sentence Peter Nadarajah more harshly that the codefendants who pled at the eve of trial.  I submit that by its failure to address almost all of the significant issues raised in the defendant's submission and its irrational recommendation the Government has forfeited its right to have its submission considered in a serious manner.

As is evident by my original submission, brevity is not my forte. However, I will seek to avoid repeating facts and arguments from the original submission and ignore Government arguments adequately covered in Peter Nadarajah's original sentencing submission, and submissions by counsel for other defendants in this and the related case that addressed those issues. I will address, to some degree, the Government's claims in the reverse order presented in its submission.

**Disclosure Violations**

During the pendency of this case  I made no secret in my discussions with the Government that I was generally aware that one or more of the co-defendants made some exculpatory statements to the Government's relating to Peter's lack of involvement in the missile deal during their proffers either just before or after their pleas in hope of securing a sentence below the mandatory minimum sentence of 25 years. I was unaware of the exact statements and the exact timing.  Indeed, I reached out to the codefendants and spoke with Thani. Had this case been tried, calling Thani as a witness relevant on the "missile" counts was considered and was a real possibility, if not probability.

More troubling than the late provision of *Brady* material to defense counsel, is the Government's failure to notify the Government of Canada that the American prosecutors could not prove by a preponderance of evidence that Peter Nadarajah played a pivotal role in the attempt to secure guided missiles as the technical expert. The Government now concedes that neither your Honor, the Canadian Government, its judges, nor a jury could rely on the statements made by the

**LAW OFFICE OF SAM A. SCHMIDT**

codefendants at the August 19, 2006 meeting or Satha's post-arrest statement as sufficiently truthful or accurate to find facts by a preponderance of the evidence. This failure not only misled the Canadian courts but prevented the appropriate exercise of the Minister of Justice's discretion. *See* pages 51-53 of original submission.

In the Record of the Case certified by AUSA Jeffrey Knox at page 9 paragraph 4, the Government certified that testimony of the border agent would corroborate "how NADARAJAH, the technical expert, was turned back from the border," thereby confirming that the basis of seeking Nadarajah's extradition was that he was the technical expert of the group and therefore an integral and important participant of the attempt to obtain missiles. The Government made no effort to correct or modify this sworn statement. It cannot be disputed that in exercising its discretion, the Minister of Justice would view someone who was the technical expert that would be examining the weapons different than one who was helping drive to the meeting.[1] Further, if you eliminate the statements as to Peter's expertise as the  connection to the meeting to obtain missiles, you are left with him a very different and weaker case for extradition. There really is no excuse for the failure to notify the Canadian authorities of the extraordinary change of circumstances.

Ideally, the remedy sought would be for Peter to be placed in the position he would have been had the Government timely notified the Canadian Government - home with the extradition case properly continuing. Perhaps it could be accomplished by permitting Peter to return home, having the Government file a new and accurate sworn Statement of the Case, and hold this case held in abeyance awaiting a decision by the Canadian authorities and judiciary.  Or, your Honor

---

[1] Inexplicably, the government has not sought the extradition of Ganesh, the person whom the co-defendants called during the meeting and had discussions about the missiles. This failure would also be relevant to the Minister's exercise of discretion.

**LAW OFFICE OF SAM A. SCHMIDT**

could release Peter on bail and I will gladly file a motion to dismiss. Otherwise, we must go forward with sentencing for Peter Nadarajah has sent 16 months in jail and more than six and one-half years under threat of deportation, wrecking havoc on him and his family.

We do seek your Honor's rejection of the Government's factual arguments of what it claims was Peter Nadarajah's role in the "missile" part of the conspiracy to provide material support for the LTTE not simply because of the untimeliness of its disclosure or its failure of disclosure to the Canadian Government. As will be demonstrated below, we seek your Honor's rejection of the Government's factual arguments of what it claims was Peter Nadarajah's role and knowledge in the "missile" part of the conspiracy to provide material support for the LTTE because it of the weakness of its argument, the lack of reliable and persuasive evidence and its failure to respond to the logical and substantial arguments made by the defense and the facts supporting our arguments.

We do not seek to diminish the seriousness of Peter's conduct. He has always acknowledged that he committed the offense of material support for assisting Thani and Sahil in obtaining cellular phones and then night vision goggles and other material.[2] Peter Nadarajah simply asks that he be sentenced for what he intended to do and did, not for what others have done.

**Section 3553(a) Factors**

There has been growing recognition in the courts and by pronouncements by President Obama, Attorney General Holder and the Department of Justice that

---

[2] Peter first gave cellular telephones to Ganesh and Thani at the end of 2005 and night vision goggles starting February 2006, not in "approximately 2003," as the Government now claims at page 2. I am at a loss to respond to the Government's present claim that Peter began providing material support for the LTTE in 2003 (when LTTE was not on the terrorism list in Canada) having seen nothing to support such statement.

**LAW OFFICE OF SAM A. SCHMIDT**

something is askew with the sentencing structure and there has been a movement towards more individualized sentencing. Recent decisions by the Supreme Court, the Circuit courts and the District courts have demonstrated this movement towards more personalized sentences and away from the arbitrariness of Guideline calculations. In response to approximately thirty (30) pages related to the 3553(a) factors in our original submission, the Government's response covered less than one page. The Government argues that your Honor cannot disregard the terrorism enhancement, but then it ignores the other 3553(a) factors and asks your Honor to do so as well.

Instead of responding to the proportionality argument relating to Thavaraja and Suresh, the Government offered a minimized version of Yogarasa 's role in the response to our submission However, in its submission for Yogarasa , the Government noted that Yogarasa  directed Satha to the informant, he relayed messages between Satha and the informant and attended their meetings, was in close association with the LTTE and had an instrumental role in the crime.

The Government also mischaracterizes the relevance of the end of the LTTE-GOSL conflict.  First, a comparison between the LTTE-GOSL civil war with the conflicts in Afghanistan, Pakistan, Colombia and Israel is unfair at best and could be the subject of a twenty page discussion. More important and relevant, however, is the future of Sri Lanka and what Peter Nadarajah has done since the end of the conflict and what he continued efforts can do.
   **(redacted)**                                                    Throughout history, major participants involved in much more serious conduct in various conflicts, including the one in Sri Lanka, have received pardons, clemency and leniency for the purpose of reconciliation and reconstruction. Peter Nadarajah's involvement in providing material support was short lived and relatively minor, especially compared with Thavaraja and Suresh.  The reconciliation is extremely important and Peter's Nadarajah's past and future assistance     **(redacted)**
                              should be a significant part of the factors considered by your Honor.

5

**LAW OFFICE OF SAM A. SCHMIDT**

**Peter Nadarajah's Conduct and Knowledge**

The Government's claim that the defense's position that Peter was not aware that the others were negotiating to purchase weapons or missiles "is directly at odds with the stipulation in the plea agreement that the defendant joined the conspiracy knowing that a goal of the conspiracy was to obtain 'dangerous weapons' for the LTTE" is simply wrong. Peter joined a conspiracy to provide material support for LTTE that included night vision goggles for soldiers. USSG § 2M5.3(b)(1) provides for the upward adjustment for "dangerous weapons" does not require personal knowledge or intent, it simply requires that:

> (1)    If the **offense** involved the provision of (A) dangerous weapons....

Of course, we do not dispute that the offense involved the provision of dangerous weapons. But Guidelines law has been clear for a long time that such adjustments occur whether or not the individual defendant was aware of that fact.

Additionally, Peter, like all other Tamils, knew that the LTTE was at war with the GOSL and required weapons to continue its fight. He was helping to provide night vision goggles to soldiers. He knew that others providing material support for the LTTE included those whose goals included obtaining dangerous weapons for the LTTE. Thus, the adjustment applies but the Government's claim that Peter's position is at odds with the stipulation is wrong.

**The Government's Concession**

The criminal complaint, the extradition papers and the offense conduct in the presentence report of Mr. Nadarajah and, I assume, of the defendants previous sentenced, described Peter as the person in the group traveling to the United States as the technical expert. And though the Government makes great effort to repeatedly remind your Honor that the others described Peter as the technical

6

**LAW OFFICE OF SAM A. SCHMIDT**

expert and can prove that they described him as such, they make an awkward concession that they cannot prove by a preponderance of the evidence that he was.

What does this concession actually mean? At the meeting, all three codefendants said he was. After the arrest, Satha said he was. So what is now different from the criminal complaint, the extradition papers and the offense conduct in the presentence reports that now causes the Government to send a letter to USPO Frank Marcigliano forty-four days after he filed his report and 27 days after defense objections, defense counsel's *Brady* request?[3]  And why was the "correction" to the PSR phrased in such a manner?

Of course, I am not privy to what the Government knows other than what is in the discovery material and the January 9, 2014 *Brady* letter. Thus, I now have the statements made by Thani, after he pled guilty and when he was speaking to the Government with the hope of cooperating and avoiding the mandatory minimum sentence of 25 years. It must be assumed that Thani spoke about more than Peter. He could have spoke of Ganesh, the person whom they called during the meeting. He could have discussed those actively assisting the LTTE in Canada and abroad. And much more.[4] What is clear is that the Government recognized that all of the statements about Peter having technical expertise were not worthy of belief. Put more clearly, these statements were lies to make it appear that this group was more knowledgeable and experience than they were.

As defense counsel replying to the Government's response, I find myself in

_____

[3] The Government is well aware that USSG §6A1.2 requires the parties to state in writing any objections to material information within 14 days of receiving the PSR. I received the report on December 2, 2013 and submitted my objections on December 13, 2013.

[4] Of course I am not privy to the rest of Thani's proffer statements so I cannot know how many people he inculpated as committing acts in support of LTTE that was criminal in nature.

**LAW OFFICE OF SAM A. SCHMIDT**

an unusual situation. The Government acknowledges that notwithstanding the identification of Peter Nadarajah as **the** technical expert, the scientist, the person who was going to examine the missiles, who "knows this stuff" and "used this stuff" by the three co-defendants present at the meeting, now concedes it cannot prove that Peter is a or the technical expert. It now claims that "[t]houghout this case, the Government has consistently maintained that the co-conspirators referred to the defendant as a "technical expert" during the arms transaction, but has never contended that the Government could independently establish that the defendant had technical expertise." p. 6.[5]

This statement is at best misleading.  As confirmed by USPO Frank Marcigliano and further evidenced at page 3 of the July 22, 2009,Government letter to Mr.  Marcigliano relating to the co-defendants,  the Government made it very clear of its position that codefendant Piratheepan Nadarajah ("Nada") was an expert in weapons technology. Document 255. *See also* Document 254.[6]  Mr. Marcigliano has confirmed that at no time has the Government contacted him in order to modify or correct its description of Mr. Nadarajah's role and how it is reflected in the PSR and Addendum until he received the January 9, 2014 letter.

So what role was Peter Nadarajah supposed to play? Ganesh, not Peter was at the August 14, 2006 meeting of Satha's partners with Thani that was surveilled by the RMCP**;** Ganesh, not Peter was the one who was called by the co-defendants

---

[5] Obtained in searches of the homes and records of Thani, Satha, in this case, and many other's including Suresh in the related matter, that provided clear evidence of their knowledge and expertise relating to weaponry. As to Peter, nothing was found that could corroborate the claims of his knowledge or expertise.

[6] I am not privy to the co-defendant's PSR but the July 22, 2009 letter states "in paragraph 13, the PSR correctly identifies that codefendant Piratheepan Nadarajah ("Nada") as an expert in weapons technology."

**LAW OFFICE OF SAM A. SCHMIDT**

at the meeting;[7]  Peter's text or telephones calls to Sahil were: 1) to let the others know he was able to get a cab to go home; 2) to let the others know he made it home; 3) to find out if everything was alright because no one ever answered any of his calls, returned any calls or returned any texts.[8]  Indeed, no one returned any communication or made any communication to Peter once he left the group at the border.

This lack of contact is consistent with Peter not being a knowledgeable part of the meeting. Thani's statement, along with Peter's sister's affidavit obtaining the passport the day of the trip, Friday afternoon, corroborates Peter's position that he was asked at the last minute to help with the ten hour drive to Long Island but because it was unlikely that he would be able to enter the United States, was not given the details of the trip. The 8-9 hours traveling from the border to Long Island, was plenty of time to explain the purpose to Sahil and prepare him for the meeting.

The Government, having rejected the statements made at the meeting about Peter as clearly false and unreliable, now argues that Thani's statement made during his proffer as to Peter lacks credibility because Thani said he came to look, not purchase, the missiles. This is, at best, a distinction without a difference. Clearly they did not have the money and arrangements to transfer funds and obtain

---

[7] *See* our original submission at page 16, where in response to the UC request to have the "technical expert" called, Thani says "no, no, no, no phone call, okay" and then Satha and Thani tell Sahil to call Ganesh.  UC1, after learning that Thani was an expert and as good as the one who did not get into the United States, asked them "why were you bringing him (Peter) then?" *Id.*

[8] As the government indicates, the text from Peter to Sahil was "Hi are you ok?" Had Peter been privy as to what was suppose to be happening, wouldn't a text asking "how is it going" or "is it going well?" been sent? Doesn't the actual text tend to demonstrate a complete lack of understanding as to what was to occur?

**LAW OFFICE OF SAM A. SCHMIDT**

the weapons would have to be made.[9]  This was not Walmart where they were going to pay cash and carry.

The Government cannot point to anything that demonstrates that Peter had actual knowledge of the specific purpose of the trip, so it relies upon arguing that it would be "illogical" or that it "makes no sense" or that they would not invite "an innocent dupe" to go along with them. This is not proof nor persuasive argument.

Peter has never claimed to be an "innocent dupe." He intentionally entered into the conspiracy to provide material support by helping Thani and Sahil obtain night vision goggles. He became friends with Thani and Sahil, who also became his personal banker.  Thus, it is not "illogical" that Thani assumed that Peter would be willing to accompany them to the meeting in New York. As so many people have attested, Peter rarely said no to requests by friends and neighbors. However, the plan to obtain missiles did not originate with Thani or Sahil, it was initiated, organized and arranged by Yoga and Satha. It is logical and does make sense, that Satha, who did not know Peter, upon learning  that it was unlikely that Peter would be allowed to enter the United States, would not inform Peter of the details of the meeting unless he actually entered the United States.[10]  That Thani assumed that Peter would agree to participate in meeting to obtain anti aircraft missiles, may have been logical to him, but it was also wrong.

We now know that much of what the co-defendants were saying to the UCs

---

[9] They clearly had made no prior arrangements to communicate with those in Sri Lanka or elsewhere who had access to the large amount of funds necessary to complete any transaction. They struggled with the pin code to call Sri Lanka then tried to make the call through Ganesh in Canada.  *See e.g.* 8/19/06 transcript at 54-58.

[10]  Peter and Sahil were seated in the front during the travel from Toronto to the border.

**LAW OFFICE OF SAM A. SCHMIDT**

was being made up as they went along, especially by Satha.[11] It is clear that except for Satha, Thani and maybe Ganesh, the number of persons that would travel was not set. While the Government asserts that by August 15 it was clear that four (4) people were going to meet the UCs, Gov't Submission (GM) at 2, on August 14, 16 and also on August 11, there were conversations that three (3) persons would be going. *See original submission at 14.[12]*

How was Peter an "integral participant" in the arms scheme? Thani called him on Friday morning and found out that he was unlikely to be permitted into the United States. And he wasn't, not because of any prior criminal conduct but because as a 14 year old refugee from Sri Lanka, he entered the United States for the purpose of living with his brother in Toronto under a false name. Nevertheless, the Government argues that the evidence "suggest that defendant was an integral participant in the arms scheme." GM at 6. What credible evidence is there that demonstrates that Peter was such a participant? He drove Thani, Satha and Sahil to the border. He lied about why they wanted to enter the United States. He tried to communicate with Sahil but no one answered or returned his calls. "Suggestion" is not suffcient.

---

[11] Examples include: 1) UC1 called the other UC playing the technical expert "my little scientist." August 19, 2006 transcript at 34. Sahil called Peter "he's our scientist." *Id.* at 53; 2) UC1, asked Thani what missiles they were using, Thani said 8 or 7 (SA8 or SA7), *Id*. at 31; and later the CI asked if they (LTTE) already had the missiles that the UCs had to sell, "18s" (SA18 version), Thani said no. *Id.* at 42. Notwithstanding never having the advanced missiles, when Thani was pressured about technical expertise, he told the UC that "actually he (the person not let into the United States) is the guy who used this stuff" *Id.* at 54-55.

[12] In an additional conversation between Satha and the CI not previously cited, on August 11, 2006, NKCM: 55908, Satha told the CI to tell the UC that "tell him that three people have to travel. They all have to coordinate the time."

**LAW OFFICE OF SAM A. SCHMIDT**

**Conclusion**

The determination of Peter's sentence should not be based upon what the Government claims the "evidence" suggests. GM at 6. The Government has offered little to support its sentence recommendation other than the offense is serious, and that "a modest sentence would risk undermining respect for the law by suggesting that a defendant can evade serious punishment for providing material support to a terrorist organization." GM at 7. We do not disagree that the offense, material support, is a serious offense.  We do dispute that respect for law would be undermined by a sentence of time served - 16 months. In fact, President Obama, Attorney General Holder and many others including judges and prosecutors have recognized that overly harsh sentences risk undermining respect for the law.

The Supreme Court has reiterated the importance of the individual assessment of the § 3553(a) factors. That means all of the factors found in 18 USC § 3553(a) and not just subsection 4 that relates to the Guidelines. I can only repeat what was expressed in our original submission,  what benefit is there by further incarcerating Peter Nadarajah?

Thank you for the extraordinary time and effort that your Honor has spent on this case and the other related matters.

Sincerely yours,
/s/
Sam A. Schmidt

cc: AUSA Alexander Solomon
    Frank Marcigliano, USPO
    Piratheepan Peter Nadarajah

12