

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMP:AAS                               *271 Cadman Plaza East*
F. #2006R01616                        *Brooklyn, New York 11201*

May 1, 2019

By ECF

Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Sathajhan Sarachandran, et al.
>        Criminal Docket No. 06-615 (S-2) (RJD)

Dear Judge Dearie:

The government respectfully submits this letter in opposition to the pro se motions of defendants Sathajhan Sarachandran, Sahilal Sabaratnam, and Thiruthankikan Thanigasalam (ECF Nos. 382, 383, and 384) seeking emergency relief for sentencing reductions pursuant to Section 102(b) of the First Step Act of 2018, Pub. L. No. 115-391, § 102(b)(2), 132 Stat. 5194, 5213 (2018) (the "First Step Act"); see 18 U.S.C. § 3624. In light of their projected release dates of September 13, 2019, the defendants argue that, under the First Step Act's modification regarding good conduct time, their amended release dates will be in June 2019, resulting in a longer period of incarceration than envisioned by the First Step Act. In support of the defendants' motions, the Federal Defenders[1] have filed a substantive supplemental brief (ECF No. 388). For the reasons set forth below, the Court should deny the motions, for the following reasons: (1) the defendants' claims are procedurally barred, (2) the Court lacks jurisdiction to award any sentencing reduction, and (3) the defendants' motions are premature.

I.    The Defendants' Claims Are Procedurally Barred

The defendants' claims fail because they have not been administratively exhausted.

---

[1]    The Federal Defenders are counsel of record solely for the defendant Sabaratnam. Therefore, the government construes the Federal Defenders' filing in this case as an amicus brief.

As an initial matter, the Bureau of Prisons ("BOP") enjoys exclusive jurisdiction to determine sentence credits. "After a district court sentences a federal offender, the Attorney General, though the BOP, has the responsibility for administering the sentence." United States v. Wilson, 503 U.S. 329, 335 (1992); see United States v. Pineyro, 112 F.3d 43, 45 (2d Cir. 1997) (per curiam). If an inmate claims that his release date has been improperly calculated, he must exhaust his administrative remedies with BOP. See, e.g., Reno v. Koray, 515 U.S. 50, 53 (1995) (describing procedural history of inmate's challenge to BOP credit determination).

In particular, the BOP provides an Administrative Remedy Program that enables inmates to challenge various decisions of the BOP, including the BOP's computation of their sentence. "Pursuant to 28 C.F.R. §§ 542.14(d) and 542.15(a), which set forth the initial filing and appellate process," an inmate challenging a sentence computation decision "may submit a request to the regional BOP office, including the [Designation and Sentence Computation Center], and, if dissatisfied with the response, may appeal within thirty days to the General Counsel." See Evans v. Larkin, No. 11-CV-4706 (JFB), 2014 WL 1814122, at *5 & n.3 (E.D.N.Y. May 7, 2014), aff'd, 629 F. App'x 114 (2d Cir. 2015) (explaining that first two stages of BOP's administrative remedy program, informal resolution, see 28 C.F.R. § 542.13, and initial filing with the staff of the facility in which he is incarcerated, see id. § 542.14(c)(4), do not apply to inmate challenging computation of his sentence); see also 28 C.F.R. § 542.14(d)(5) ("[F]ormal administrative remedy requests regarding initial decisions that did not originate with the Warden, or his/her staff, may be initially filed with the Bureau office which made the original decision, and appealed directly to the General Counsel.").

Only after exhausting relevant BOP administrative proceedings may a defendant seek review from the district courts through a 28 U.S.C. § 2241 habeas petition. Section 2241 permits a district court to review petitions from federal prisoners claiming that they are being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Section 2241 . . . is the proper means to challenge the execution of a sentence. In a § 2241 petition, a prisoner may seek relief from such things as, for example, the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison conditions in the facility where he is incarcerated." Adams v. United States, 372 F.3d 132, 135 (2d Cir. 2004); see also Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) ("A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction."). Failure to exhaust administrative remedies results in a procedural default, which bars habeas review of a petitioner's claim unless the petitioner can "proffer[] an adequate excuse for his failure" to exhaust the BOP's administrative remedies, and can show that he will be prejudiced if the court refuses to review the merits of his claim. Id. at 634-35.

Accordingly, courts have uniformly rejected requests under Section 2241 for recalculation of release dates under the good conduct time provision of the First Step Act as procedurally barred, absent exhaustion of BOP administrative remedies. See, e.g., Matthews

v. Williams, No. 4:19CV518, 2019 WL 1639776, at *1 (N.D. Ohio Apr. 16, 2019) (dismissing § 2241 petition under the First Step Act for failure to exhaust BOP administrative remedies); United States v. Powell, No. 5:11-CR-75-JMH-1, 2019 WL 1521972, at *2 (E.D. Ky. Apr. 8, 2019) ("The express language of 18 U.S.C. § 3624, makes clear that it is the BOP, not the district court, that determines whether a federal prisoner should receive good time credit. As a result, this Court cannot grant the relief [defendant] seeks." (citation omitted)).

In this case, none of the defendants has proffered any information suggesting they have exhausted—let alone initiated—their administrative remedies within the BOP. Therefore, their claims are procedurally barred.

II.     The Court Lacks Jurisdiction to Adjudicate the Defendants' Claims

The defendants' claims also fail on jurisdictional grounds, because any arguably available habeas claims under 28 U.S.C. § 2241 must be brought in the district where the defendants are currently detained.

Habeas review of BOP sentence computations is subject to important limitations, including geographic limitations. Notably, "the proper respondent to a habeas petition is 'the person who has custody over the petitioner,'" specifically, "the warden of the facility where the prisoner is being held," Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004), and "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions,'" id. at 442 (quoting 28 U.S.C. § 2241(a)), which means "that the court issuing the writ [must] have jurisdiction over the custodian," id. (quotation marks omitted).

Accordingly, after exhausting administrative remedies under the BOP's Administrative Remedy Program, a defendant may obtain review of the BOP's sentence computation by filing in the United States District Court with jurisdiction over the warden of the facility in which a defendant is held a § 2241 habeas petition naming as respondent the warden of the facility. See United States v. Scouten, No. 13-CR-20S, 2019 WL 1596881, at *1 (W.D.N.Y. Apr. 15, 2019) (finding no jurisdiction where defendant housed in Pennsylvania); see also United States v. Harriman, No. 1:04-CR-162, 2010 WL 3702533, at *1 (D. Vt. Sept. 16, 2010) (dismissing sentence computation challenge filed in District of Vermont by prisoner incarcerated in Pennsylvania); Tribble v. Killian, 632 F. Supp. 2d 358, 361 (S.D.N.Y. 2009) (transferring duplicative § 2241 petition challenging sentence computation to Northern District of Georgia where prisoner had already filed a § 2241 petition raising same argument).[2]

---

[2]     The sole contrary authority cited by the Federal Defenders—and the only known contrary authority to the undersigned counsel—is an unpublished order from the District of Oregon. United States v. Walker, 10-CR-298 (RRB) (D. Or. Feb. 7, 2019), ECF No. 110. Notably, the Walker court did not include any analysis of the jurisdictional question, aside from summarily adopting the position of the defense. Additionally, at least

3

Here, none of the defendants are presently housed in the Eastern District of New York.  Accordingly, this Court lacks jurisdiction to hear the defendants' claims.

III.    The Motions Are Premature

In their amicus brief, the Federal Defenders argue that, based on cannons of statutory construction and the legislative history of the First Step Act, the Court should construe the good time credit provision to have immediate effect.  However, this analysis is misguided, where the statutory language is clear on the dispute at issue.

According to the plain language of the statute, Section 102(b) of the First Step Act is not yet effective.  Section 102(b) of the First Step Act amends 18 U.S.C. § 3624(b) to change the method by which the BOP must calculate good conduct time credits, ensuring a maximum of 54 days of good conduct time credit per year of sentence imposed.  By the plain terms of the statute, this subsection becomes effective beginning on the date that the Attorney General completes and releases the risk and needs assessment system under section 101(a) of the Act.[3]  The current deadline for the Attorney General to complete and release the risk and needs assessment is July 19, 2019.  Because the section implementing the retroactive computation of good conduct time credits is not yet effective, the defendants are not entitled at this time to any additional good conduct time credits by BOP and a modification of their release dates.  See Christopher v. Wilson, No. 4:19cv-214-O, 2019 WL 1745968, at *1 (N.D. Tex. Apr. 18, 2019) (good-time credit change not to be implemented until Attorney General completes risk and needs assessment system); Scouten, 2019 WL 1596881, at *1 (holding that the provision assuring 54 days of good conduct time is not yet effective; defendant's "arguments to the contrary—that § 102 (b)(1)(A) is immediately effective—are each unpersuasive in light of the plain effective date provision in § 102 (b)(1)(B)"); Powell, 2019 WL 1521972, at *3 (same); Rizzolo v. Puentes, No. 1:19-cv-00290-SKO (HC), 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019) (same); Schmutzler v. Quintana, No. 5:19-046-DCR, 2019 WL 727794, at *2 (E.D. Ky. Feb. 20, 2019) (same).

The Court should not accept the invitation of the Federal Defenders to ignore the plain text of the statute—which provides that the effective date of the amendments to § 3624(b) take effect "beginning on the date the Attorney General completes and releases the risk and needs assessment system."  First Step Act § 102(b)(2); see 18 U.S.C. § 3624 (amend. subsec. (B)(1)).  As recently observed by a district judge in South Carolina, "The Court is obligated to apply the law as it is written.  Congress chose to delay the

---

one court has called the analysis of Walker into question.  United States v. Yates, No. 15-40063-01-DDC, 2019 WL 1779773, at *3 (D. Kans. Apr. 23, 2019).

[3]    Section 102(b)(2) states: "EFFECTIVE DATE.—The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of Chapter 229 of title 18, United States Code, as added by section 101(a) of this Act."

4

implementation of the First Step Act's amendments until the Attorney General could complete the risk and needs assessment.  The Court has no power to rewrite or disregard the express language of the statute." Brown v. Warden of FCI Williamsburg, No. 8:19-cv-00546-HMH-JDA, 2019 WL 1780747, at *6 (D.S.C. Mar. 25, 2019).  The Court should follow this weight of authority in holding that the express language of the statute clearly provides that the good conduct modification is not yet effective.

IV.     The Defendants Will Not Suffer Any Due Process Violation

The Court should also reject any suggestion by the Federal Defenders that the defendants will suffer a due process violation due to any delayed implementation of the good time credit provision of the Next Step Act.  The defendants had no preexisting entitlement to the benefit of the new computation method; Congress was free to set an effective date of its choosing.  Moreover, the new good conduct time credit system applies equally to all inmates, whether they offended "before, on, or after the date of enactment" of the First Step Act.  First Step Act § 102(b)(2); see also Williams v. Illinois, 399 U.S. 235, 243 (1970) ("The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences."). Indeed, Congress rationally chose to provide BOP a reasonable time to develop and implement through notice-and-comment rulemaking a new approach to awarding credit not only for good conduct, but also for successful completion of recidivism reduction programming under 18 U.S.C. § 3632(d)(4).  Cf. United States v. Navarro, 800 F.3d 1104, 1110-14 (9th Cir. 2015) (rejecting arguments that delayed implementation of Guideline Amendments 782 and 788 violated the Due Process and Equal Protection Clauses because delay provided necessary time for court review, accommodated the need to arrange for transition and reentry programs, and allowed affected agencies to prepare for increased workload).

As noted above, the one case proffered by the Federal Defenders in support of their due process argument—an unpublished decision from the District of Oregon—is of limited precedential value.  In United States v. Walker, 10-CR-298 (RRB) (D. Or. Feb. 7, 2019), ECF No. 110, the court ordered the BOP to recalculate the defendant's release date using the amended good time provision in § 3624.  However, the district court "explicitly declined to evaluate the merits of Mr. Walker's argument because the government hadn't responded to it." Yates, 2019 WL 1779773.  Indeed, the Yates court characterized "the decision in Walker as having limited persuasive value because of the government's failure to respond to the offender's argument." Id. at *4.  Critically, the government has not located any additional authority supporting the Federal Defenders' due process argument.

5

V.      Conclusion

For the reasons set forth above, the government respectfully requests that the defendants' motions be denied.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/ Alexander A. Solomon
Alexander A. Solomon
Assistant U.S. Attorney
(718) 254-6074