UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

UNITED STATES OF AMERICA,

                    -against-                                                      06 Cr. 615 (RJD)

                                                                          **MEMORANDUM & ORDER**

SATHAJHAN SARACHANDRAN, SAHILAL
SABARATNAM, & THIRUTHANIKAN
THANIGASALAM,

                    Defendants.

-------------------------------------------------------------x

DEARIE, District Judge.

Before the Court are the defendants' pro se motions (ECF Nos. 382-384) seeking

sentencing reductions. They ask this Court, despite unambiguous statutory language to the

contrary, to declare *immediately* effective a portion of the First Step Act of 2018, enacted on

December 21, 2018. The relevant provision, Section 102(b) of the new law, amends 18 U.S.C.§

3624(b), the "good time credit" statute, to adjust the method by which the Bureau of Prisons

("BOP") calculates the credit to ensure that defendants receive the maximum of 54 days of good

conduct time for each year of the sentence *imposed*, rather than, as had been BOP's practice, for

each year of the sentence served, abrogating Barber v. Thomas, 560 U.S. 474 (2010) (rejecting

challenge to BOP's method of awarding good time credit at the end of each year of sentence

served). See generally Pub. L. No. 115-391, § 102(b)(2), 132 Stat. § 5194 (2018) (the "First Step

Act" or the Act).

Section 102(b)(2), however, captioned "EFFECTIVE DATE," states:

> The amendments made by this subsection shall take effect beginning on the date
> that the Attorney General completes and releases the risk and needs assessment
> system under subchapter D of chapter 229 of title 18, United States Code, as
> added by section 101(a) of this Act.

The government reports, and the defendants do not dispute, that the current deadline for the Attorney General to complete the risk and needs assessment is July 19, 2019. Likewise, the parties report that the Bureau of Prisons has announced to its inmate population that the good credit amendment has a delayed effective date no earlier than a date in July 2019.

These defendants have been incarcerated since August 2006 on fifteen-year terms, and each is scheduled for release late summer or early fall of this year (2019). It is not disputed, however, that under the amended law, which is retroactive,[1] each defendant would qualify for up to 105 additional days of good time credit and, therefore be released sometime in June 2019. Defendants understandably fear that, because their projected release dates are approaching, delayed implementation of the amended law will mean that they are denied its benefits entirely, facing irreparable harm in the form of over-service of their sentences.

The Court has reviewed the compelling supporting briefs submitted on defendants' behalf by the Federal Defenders (ECF Nos. 388 and 390) as well as the government's opposing letter (ECF No. 389) and concludes that the motions must be denied.

The thrust of the defendants' arguments is a somewhat tortured exercise in statutory construction that is simply foreclosed by the plain language and structure of the relevant portions of the statute. Briefly, adopting here the statute's own choice of nomenclature, the Act divides itself into six "Titles," each containing one or more "Sections." Within Title I, captioned "Recidivism Reduction," there exist seven named "Sections," numbered 101 through 107. The provision before the Court, as noted, is Section 102, captioned "Implementation of system and

---

[1] Section 102(b)(3) of the new law provides: "The amendments made by this subsection shall apply with respect to offenses committed before, on, or after the date of enactment of this Act, except that such amendments shall not apply with respect to offenses committed before November 1, 1987."

recommendations by Bureau of Prisons." Notably, Section 102 contains two subsections, labeled as "(a) Implementation of System Generally" and "(b) Prerelease Custody." Subsection 102(b), "Prerelease Custody," in turn contains three subparagraphs, as follows: 102(b)(1), "In General"; 102(b)(2), "Effective Date"; and 102(b)(3), "Applicability."

More particularly still, and to facilitate adjudication of defendants' argument: subparagraph (1) of Subsection 102(b) actually contains two branches. The first is the language that amends 18 U.S.C. § 3624 with respect to how good time credit is calculated (the "Good Time Credit Branch"). But the subparagraph also contains language that *adds* a new provision to 18 U.S.C. § 3624 that will allow "eligible prisoner[s]" with "earned time credits" equal to the time remaining on their sentences to be transferred to home confinement, residential re-entry, or early supervised release (the "Earned Time Credit Branch").

In asking for immediate application of the good time credit amendment, defendants argue that the effective date provision—Section 102(b)(2)—applies *only* to the "earned time credit branch" of Section 102(b)(1) but *not* to the good time credit branch of Section 102(b)(1). They make the creative but misguided assertion that the phrase "this subsection" in the effective date provision applies to the new subsection of 18 U.S.C. § 3624 that the Earned Time Credit Branch adds, but *not* to the subsection of the First Step Act in which the effective date provision appears.

This reading of the statute is untenable in light of the plain statutory language and structure just detailed. Indeed, fatal to defendants' interpretation of the effective date provision is their wholehearted *agreement* that the phrase "this subsection" as in the adjacent retroactivity provision, Section 102(b)(3) (see note 1 supra), *does* apply to both "branches" of Section 102(b)(1).

Finally, the weight of the emerging authority on the question likewise counsels against accepting defendants' invitation to ignore the plain language of the statute. See, e.g., Christopher v. Wilson, No. 4:19-cv-214-O, 2019 WL 1745968, at *1 (N.D. Tex. Apr. 18, 2019) ("the good-time-credit change will not take effect until the attorney general completes the "risk and needs assessment system" required to be completed within 210 days after the December 21, 2018 enactment . . . [*i.e.*,] approximately mid-July 2019") (collecting additional authorities); Crittendon v. White, No. 1:19-cv-669, 2019 WL 1896501, at *1 (M.D. Pa. Apr. 20, 2019) (motion seeking immediate recalculation of good time credit under the Act denied as premature because change not effective until approximately mid-July") (collecting additional authorities from federal district courts in South Carolina, California and Kentucky.). But see United States v. Walker, 10-CR-298 (RRB) (D. Or. Feb. 7, 2019) (unpublished) Dkt. No. 110 (ordering that BOP "recalculate Defendant's release date forthwith" using the amended good-time-credit provision at rate of 54 good conduct days per year).

Although ultimately not enough to secure the relief defendants seeks, the equitable concerns and practical considerations they raise are compelling. They argue, for example, that it makes little sense for implementation of the good time credit fix to await the statutorily required needs and risk assessment, which has an obvious connection to the pre-release options authorized by the *new* law enacted by the Earned Time Credits Branch of Subsection 102(b) but, arguably, little or no rational relation to the *simple fix* intended by the good-time-credit amendment. Further, defendants argue that legislation merely rectifying an earlier mistaken practice is typically the kind that is and should be effective upon enactment. They emphasize that the good time credit system is not new, that it operates on a separate plane from the earned time credit transfer provisions, and that the amendment amounts to a simple recalculation—likely a

straightforward computerized adjustment—that BOP can easily make, today. As noted, it is not disputed that these defendants (i) have been near model prisoners and so would qualify for the good time credit, (ii) are already close to release and scheduled for immediate deportation thereafter, so the risk assessments associated with pre-release are not implicated, and (iii) conversely, because they are close to release, delayed implementation could mean they do not receive any of the benefits of the rectified law.[2] The fact that this Court lacks the authority to rewrite or bypass the statute does not, this Court hopes, have to mean that BOP must remain altogether idle or bureaucratically passive to the demands of common sense and simple decency.

SO ORDERED.

Dated: Brooklyn, New York
       June 19, 2019

                                    s/Raymond J. Dearie
                                    _____
                                    RAYMOND J. DEARIE
                                    United States District Judge

---

[2] Defendants' claim that delayed implementation of the good time credit fix violates due process and equal protection is without merit, as inmates are not a suspect class. Perez v. Zenk, No. 04-CV-5069 (CBA), 2005 WL 990696, at *4 (E.D.N.Y. Apr. 11, 2005). "As to the question of fundamental rights, the good time credit statute merely authorizes the BOP to offer prisoners the benefit of a reduced sentence in exchange for good behavior. . . It therefore does not implicate any fundamental right implicitly or explicitly guaranteed by the Constitution." Id.

Having adjudicated the merits of defendants' application, the Court declines to reach the threshold issues briefed by the government addressing the styling and form of the defendants' application and its relation to questions of exhaustion and jurisdiction.